**Beverly LILLY, Plaintiff–Appellant,**

v.

**Dr. Charles SMITH, Commissioner of the Department of Education For the State of Tennessee; Walter L. Price, Chairman of the Tennessee Higher Education Commission; Dr. Arliss L. Roaden, Executive Director of the Tennessee Higher Education Commission; Tennessee Higher Education Commission; Lamar Alexander, President of the University of Tennessee System; University of Tennessee System; Thomas J. Garland, Chancellor of the State University and Community College System of Tennessee; the State University and Community College System of Tennessee; the Board of Nursing of the State of Tennessee; Dolores Moore,**
Chairman of the Board of Nursing of the State of Tennessee; Elizabeth Lund, Executive Director of the Board of Nursing of the State of Tennessee; Dr. Karan A. Bowyer, President of Dyersburg State Community College; Dyersburg State Community College; Raymond C. Bowen, President of Shelby State Community College; Shelby State Community College; and Dr. Margaret N. Perry, Chancellor of the University of Tennessee at Martin; University of Tennessee at Martin, Defendants–Appellees.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 2, 1990.

Application for Permission to Appeal Denied by Supreme Court May 7, 1990.

**540**

James D. Senter III, Senter & Senter, Humboldt, Randy C. Camp, Alamo, for plaintiff-appellant.

Charles Burson, Atty. Gen. and Reporter, Jane W. Young, Asst. Atty. Gen., Nashville, Beauchamp E. Brogan, Gen. Counsel, Catherine S. Mizell, Associate Gen. Counsel, University of Tennessee, Knoxville, for defendants-appellees.

## OPINION

LEWIS, Judge.

Plaintiff brought this suit on behalf of herself and others similarly situated against the defendants when she was refused admission to a state nursing school based on a policy which she alleged was invoked, executed and enforced in violation of art. I, sec. 8, of the Tennessee Constitution and the fourteenth amendment to the U.S. Constitution.

Defendants filed a motion to dismiss the complaint pursuant to Tenn.R.Civ.P. 12.-02(1) and 12.02(6) in which they alleged lack of jurisdiction and the failure to state a claim upon which relief can be granted. The trial court sustained the motion to dismiss on the ground that plaintiff failed to state a claim upon which relief could be granted. Tenn.R.Civ.P. 12.02(6).

A Tenn.R.Civ.P. 12.02(6) motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Cornpropst v. Sloan*, 528 S.W.2d 188, 190 (Tenn.1975). In scrutinizing a complaint in the face of a Tenn.R. Civ.P. 12.02(6) motion, "the court should construe the complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true." *Sullivant v. Americana Homes, Inc.*, 605 S.W.2d 246 (Tenn. App.1980) (quoting *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn.1975)).

The pertinent facts as contained in the complaint and which, for purposes of the motion to dismiss, are admitted as true are as follows:

The two "D" grade policy prevails at all public colleges, community colleges and universities of the State of Tennessee, the policy being prescribed, promulgated, executed and enforced by the defendants. The policy states that if two "D" grades or below are received during the nursing program in any school of nursing in the State of Tennessee, not only must dismissal take place, but the person receiving such grades is never eligible for re-admission into the nursing programs of any of the public schools of nursing in the State of Tennessee.

This policy was consistently invoked, executed and enforced over a period of years.

The plaintiff, a thirty-six-year-old female, entered the nursing program at Dyersburg State Community College (Dyersburg State) in January of 1984. After taking a year of prerequisites to nursing school, she entered the nursing school program which consisted of seven quarters. During her second quarter at Dyersburg State she received one "D". She later repeated this course and received a grade of "B". In her fifth quarter she received a second "D" grade. Pursuant to Dyersburg State's policy, she was not allowed to repeat this course. Because she had received two "D"

grades while in nursing school, she was dismissed from the nursing program.

The plaintiff re-applied for admission to the school of nursing at Dyersburg State, but was denied admission because of the two "D" grade policy. She subsequently applied to Shelby State Community College for admission to its nursing school and was informed she would not be admitted because of the two "D" grade policy. She then applied to the University of Tennessee at Martin School of Nursing but was denied admission also under the two "D" grade policy.

The trial court, in its order dismissing plaintiff's complaint, stated in part as follows:

> The Court grants the motion to dismiss on the grounds that the plaintiff has failed to state a claim for constitutional violations. The Court does not rule on the issues of sovereign or qualified immunity. In this case, it is important to note that the plaintiff is not alleging that she is treated differently than any other similarly situated nursing student by reason of the 2 "D" policy; she is not alleging that she received the "Ds" pursuant to a discriminatory practice; nor is she alleging any due process violation in connection with the awarding of the "D" grades.
>
> The plaintiff merely alleges that an academic policy which applies to the plaintiff and all other similarly situated students is unfair.

Plaintiff insists that the action of the trial court in limiting plaintiff's classification to nursing students at state schools who have received two or more "Ds" in previous nursing courses is an "obvious error." She insists that the class consists of all students in state colleges and universities, whether it be students in law school, medical school, nursing school or others. She admits in her brief and at oral argument "that she is not being treated differently from the nursing students in state schools."

Plaintiff also argues that the trial court did not consider the question of whether the two "D" grade policy was unconstitutional and that therefore the only question before this Court is whether the court erred in limiting her classification to nursing students at state schools.

■ The trial court did consider the question of whether the two "D" grade policy was unconstitutional. The trial court, in its order, states: "The Court grants the motion to dismiss on the grounds that the plaintiff has failed to state a claim for constitutional violations." The court noted that the plaintiff did not allege that she was treated differently from any other similarly situated nursing student by reason of the two "D" policy and then summarized plaintiff's arguments by stating that "[t]he plaintiff merely alleges that an academic policy which applies to the plaintiff and all other similarly situated students is unfair."

As did the trial court, we find nothing in plaintiff's complaint alleging that she has been treated differently from others in her class and it is clear that plaintiff's class is nursing students who have been subjected to the two "D" grade policy.

■ We also find that the two "D" grade policy does not violate substantive due process or equal protection.

The record sustains the trial court's holding that "plaintiff merely alleged that an academic policy which applies to the plaintiff and all other similarly situated students is unfair." While we may think the two "D" policy is unfair or unwise, determining the wisdom of an academic policy which may appear stringent to some is better left to the discretion of the nursing faculty, not lawyers and judges. *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985).

We are not persuaded by plaintiff's argument that the two "D" policy violates "equal protection of the law afforded plaintiff by the Fourteenth Amendment to the U.S. Constitution and by Art. I, Sec. 8, of the Tennessee Constitution."

In *Pappanastos v. Board of Trustees*, 615 F.2d 219 (5th Cir.1980), the plaintiff, a graduate of a non-accredited law school,

sued pursuant to 42 U.S.C. § 1983. Plaintiff alleged that the University of Alabama Law School's requirement that, *inter alia,* an applicant to its graduate course in taxation must possess a J.D. or equivalent degree from a law school accredited by the American Bar Association before admission, denied plaintiff equal protection of the law. *Id.* at 220.

The *Pappanastos* Court stated that in all cases implicating the equal protection clause " 'we must first determine what burden of justification the [challenged] classification ... must meet.' " *Id.* (quoting *Zablocki v. Redhail,* 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (1978)). The proper degree of judicial "scrutiny" is a function of two variables: First, the nature of the right affected and, second, the identity of the plaintiff. *Id.* "If the classification 'interferes with the exercise of a fundamental right or operates to the particular disadvantage of a suspect class,' 'strict' judicial scrutiny is then the standard of review. Otherwise, the question is whether the classification bears 'a rational relation to a legitimate state interest.' " *Id.* at 220–221 (citations omitted).

The plaintiff in *Pappanastos* conceded, and the Court held, that the "rational relationship" test controlled the case. *Id.* at 221. The Court noted that admission to the tax program was not a basic civil right and, further, that it could not be said that graduates of unaccredited law schools suffer " 'such disabilities, or [are] subjected to such a history of purposeful unequal treatment, or [are] relegated to such a position of political powerlessness as to command extraordinary protection from a majoritian [*sic*] political process.' " *Id.* at 221 (quoting *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973)).

█ Here, admission to state nursing schools is not a basic civil right. Furthermore, an individual who has received two "D" grades in nursing courses in a previous nursing program is not an individual who suffers a disability or has been subjected to a history of purposeful unequal treatment or is relegated to such a position of political powerlessness as to command extraordinary protection from a majoritian political process. *See Mohammed v. Mathog,* 635 F.Supp. 748, 752 (E.D.Mich.1986).

Plaintiff concedes, and we agree, that the appropriate equal protection test is whether the "classification bears a rational relation to a legitimate state interest." We then must decide whether " 'any state of facts reasonably may be conceived to justify' " the two "D" grade policy. *Pappanastos,* 615 F.2d at 221 (quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)).

In *Pappanastos,* the Court found that "[p]atently, such matters as curriculum, faculty, library facilities, class attendance, and pre-legal studies bear a rational, albeit not a perfectly precise, relation to the quality of law school education." 615 F.2d at 221.

We can easily conceive a state of facts upon which the two "D" grade policy may be justified. Like the law school in *Pappanastos,* the nursing institution endeavors to accept those applicants who exhibit professional promise. It may easily be determined that those individuals who have previously made two "D" grades in nursing courses in the state nursing program would not exhibit the professional promise necessary to make them successful in the nursing programs.

Plaintiff attempts to distinguish *Pappanastos* by arguing that the plaintiff in *Pappanastos* would have the right to attempt to obtain an accredited J.D. or equivalent degree while, in her case, she is forever barred from entering a nursing school. In both *Pappanastos* and this case, what is challenged is an admission requirement. In *Pappanastos,* the requirement was that the applicant possess an accredited J.D. or equivalent degree. Here, the requirement was that the applicant not have made two "D" grades in previous nursing courses. Just as the plaintiff in *Pappanastos* could obtain an accredited J.D. or equivalent degree, the plaintiff may in this case seek admission to a private nursing school in Tennessee or to a public or private nursing school in another state. There is a rational

relationship between the admission requirement and legitimate state policy.

Plaintiff has failed to state a claim for violation of the equal protection clause of the U.S. Constitution and the Tennessee Constitution with respect to the two "D" grade policy regarding admission.

The judgment of the trial court is affirmed with costs assessed to the plaintiff and the cause remanded to the trial court for the collection of costs and further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.